UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 26-cv-80445-Cannon/McCabe

AMAYA WILLIAMS,

Plaintiff,

v.

GENESIS EDUCATIONAL SERVICES
OF FLORIDA, INC., a Florida Profit Corporation,
d/b/a PALM BEACH ACADEMY OF
HEALTH & BEAUTY,

Defendants.
_______________________________________/

**REPORT & RECOMMENDATION**

THIS CAUSE comes before the Court on Plaintiff's Motion for Default Judgment (DE 16), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 17). For the reasons set forth below, the undersigned **RECOMMENDS** that the motion (DE 16) be **GRANTED IN PART** and that Default Judgment be entered in the amount of **$53,995.08**.

## I. BACKGROUND

This is an employment discrimination case brought by a former front desk administrator (Plaintiff) against a defunct beauty school (Defendant). On April 21, 2026, Plaintiff filed a nine-count Complaint against Defendant, alleging various theories of race, sex, and pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA"). (DE 1).[1]

[1] The Complaint alleged the following counts: Count I (Race and Color Discrimination in Violation of Title VII), Count II (Race and Color Discrimination in Violation of the FCRA), Count III (Sex Discrimination in Violation of Title VII), Count IV (Sex Discrimination in Violation of the FCRA), Count V (Pregnancy Discrimination in Violation of Title VII and the Pregnancy

On April 24, 2026, Plaintiff effected service of process on Defendant. (DE 5). In response, Defendant failed to answer, appear, or otherwise respond to the Complaint. As a result, Plaintiff moved for entry of Clerk's default, which the Clerk entered on May 22, 2026. (DE 6, DE 7).

Thereafter, on June 7, 2026, the District Judge vacated the Clerk's default and directed Plaintiff to file a supplemental memorandum addressing whether Defendant's corporate dissolution required the joinder of additional parties under Fed. R. Civ. P. 19(a). (DE 8). Plaintiff responded with a supplemental memorandum acknowledging Defendant's voluntary corporate dissolution and taking the position that no additional parties needed to be joined to the lawsuit. (DE 9). The District Judge thereafter directed Plaintiff to renew her request for a Clerk's default and to send notice of that request to Defendant. (DE 10). Plaintiff filed her renewed request on June 18, 2026, and the Clerk entered a default against Defendant that same day. (DE 12, DE 13).

This motion for default judgment followed on July 14, 2026. (DE 16). Defendant has not responded to this motion, moved to set aside the default, or otherwise appeared in the action.

## II. **LEGAL STANDARD**

A default judgment may be entered against a defendant who has failed to plead or otherwise defend against a lawsuit. Fed. R. Civ. P. 55(b)(2). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (cleaned up). Before entering a default judgment, a court must determine that a "sufficient basis" exists for the judgment, which finding is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239,

Discrimination Act), Count VI (Retaliation in Violation of Title VII), Count VII (Retaliation in Violation of the FCRA), Count VIII (Hostile Work Environment in Violation of Title VII), and Count IX (Hostile Work Environment in Violation of the FCRA). (DE 1).

1245 (11th Cir. 2015). Also, a court may not enter a final default judgment awarding monetary damages without an evidentiary hearing "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543-44 (11th Cir.1985) (cleaned up).

## III. DISCUSSION

The Court will first address the sufficiency of the Complaint, followed by damages, followed by attorneys' fees and costs.

### A. Sufficiency of the Complaint

As stated, the Complaint alleges nine counts for relief under various theories of Title VII and FCRA liability. Given that all counts allege overlapping and duplicative claims for damages, the Court need not address the sufficiency of all nine counts. Instead, the Court will limit its analysis solely to Count V, which authorizes all of the damages that Plaintiff seeks. *See Bedabox LLC v. Toy Overlord, Inc.*, No. 24-61821-CIV, 2026 WL 1648989, at *5 (S.D. Fla. June 8, 2026) ("Because this Court finds that Plaintiff is entitled to default judgment as to Count I for Breach of Contract, this Court need not address Plaintiff's alternative claims for relief."); *Wesco Ins. Co. v. Repasky*, No. 19-81734-CIV, 2020 WL 3129145, at *3 (S.D. Fla. June 12, 2020) ("Because the Court will enter a final default judgment as to both Counts I and II—and because those counts entitle Wesco to all the relief it seeks—the Court need not address Wesco's arguments about Counts III (an alternative theory of liability) or IV (an alternative form of relief).").

Count V alleges a violation of Title VII as amended by the Pregnancy Discrimination Act. (DE 1 ¶¶ 99–114). Title VII makes it unlawful for an employer, among other things, "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's … sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act amended Title VII to clarify that sex discrimination includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k) (cleaned up). To survive dismissal in a Title VII case, a plaintiff must allege sufficient factual matter, accepted as true, to plausibly suggest intentional discrimination. *Smith v. Pepsi Bottling Group*, No. 24-11597, 2026 WL 937070, at *6 (11th Cir. Apr. 7, 2026); *see also Davis v. Miami-Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *3-4 (11th Cir. Sept. 5, 2024) (noting that Title VII plaintiffs need not satisfy the elements of a prima facie case of discrimination under *McDonnell Douglas* to survive dismissal).

The Court has reviewed the allegations of Count V and finds them sufficient to state a plausible claim for discrimination based on pregnancy. The allegations include the following:

- Defendant is a qualified employer for the purposes of Title VII. (DE 1 ¶ 9).
- Plaintiff is a woman and was visibly pregnant throughout her employment with Defendant. (DE 1 ¶¶ 8, 12, 73, 87, 103).
- Plaintiff was qualified to perform her duties as a front desk administrator. (DE 1 ¶¶ 32, 74, 88, 104).
- Plaintiff's supervisor repeatedly pressured Plaintiff to delay or reschedule her prenatal appointments and refused to allow her to attend appointments during the workday. (DE 1 ¶¶ 20–22).
- Plaintiff's supervisor also threatened to terminate Plaintiff if she left work to obtain pregnancy-related medical treatment. (DE 1 ¶ 31).
- Plaintiff's supervisor told Plaintiff that most companies would not hire a pregnant woman and that "no one told [Plaintiff] to get pregnant." (DE 1 ¶¶ 24, 27).

- Defendant terminated Plaintiff immediately after the conclusion of her 90-day probationary period, even though she had never arrived late, received a write-up, or failed to perform her assigned duties. (DE 1 ¶¶ 32–34).
- Following her termination, somebody—the Complaint does not identify who—told Plaintiff, "Don't think because you're pregnant anybody owes you anything, so hurry up and get the hell off this campus." (DE 1 ¶ 34).

Taken together, these allegations suggest that Defendant subjected Plaintiff to disparate treatment and terminated her employment because of her pregnancy. The Court therefore finds a "sufficient basis" for entry of a default judgment on Count V for purposes of *Surtain*, 789 F.3d at 1245. Given this conclusion, the Court need not address the sufficiency of the remaining counts of the Complaint.

**B. Damages**

Plaintiff seeks $80,399.77 in damages, consisting of $35,599.93 in back pay, $24,799.84 in front pay, and $20,000 in compensatory damages for emotional distress. (DE 16 at 9-14). The Court will address each component in turn.

**1. Back Pay**

Plaintiff seeks $35,599.93 in back pay. (DE 16 at 10). Title VII authorizes back pay to remedy intentional employment discrimination. 42 U.S.C. § 2000e-5(g)(1). The purpose of back pay is to make plaintiffs whole for the damages caused by unlawful discrimination. *Darnell v. City of Jasper, Ala.*, 730 F.2d 653, 656 (11th Cir. 1984). Back pay means the difference between the actual wages earned by a plaintiff and the wages he or she would have earned but for the unlawful discrimination. *Akouri v. Florida Dept. of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005). Back pay normally runs from the date of the adverse employment action up to the date of the final

judgment. *See Nord v. United States Steel Corp.*, 758 F.2d 1462, 1473 (11th Cir.1985) (reversing where district court ordered back pay up to the date of bench trial rather than date of final judgment four months later).

The rule is slightly different where, as here, a defendant goes out of business prior to the date of final judgment. To award back pay in such circumstances would make a plaintiff better than whole since it would compensate the plaintiff during a time when he or she would not have had a job with defendant, for reasons unrelated to discrimination. For this reason, courts generally recognize that back pay ceases when a defendant goes out of business. *See Howes v. Keokuk Hosp. Inv., LLC*, No. 3:07-CV-00051, 2008 WL 11333890, at *3 (S.D. Iowa Jan. 28, 2008) (awarding back pay up to date of employer's corporate dissolution); *Grame v. Osborn Transp., Inc.*, No. 99-4120-DES, 2001 WL 951357, at *2 (D. Kan. July 19, 2001) ("[W]here an employer goes out of business and terminates all employees, plaintiff's eligibility for back pay ceases."); *E.E.O.C. v. Regency Architectural Metals Corp.*, 896 F. Supp. 260, 271 (D. Conn. 1995) (stating that "the cut off point for recovering back pay is ... when the shop where [plaintiff] was working went out of business").

In addition, Title VII plaintiffs owe a duty to mitigate their damages by using reasonable diligence to find other suitable employment following an unlawful termination. *See Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982). To the extent a plaintiff finds other suitable employment, any such earnings must be deducted from an award of back pay. *See Nord*, 758 F.2d at 1471–72 (reversing where district court failed to reduce back pay award by amounts earned by plaintiff in mitigation).

Applying these standards here, the Court finds that Plaintiff should receive a back pay award running from the date of her termination up to the date Defendant filed its corporate

dissolution, minus any amounts Plaintiff earned in mitigation. Plaintiff has submitted a sworn declaration attesting that Defendant terminated her employment on January 14, 2025. (DE 16-1 ¶ 30). At the time of termination, Plaintiff earned $20 per hour, which she calculated as $38,400 per year. (DE 16-1 ¶ 30). Based on this annual figure, Plaintiff's average weekly wage was $738.46 ($38,400 ÷ 52 weeks = $738.46 per week). Plaintiff remained unemployed from the date of her termination up to September 11, 2025, a period of approximately thirty-four weeks. (DE 16-1 ¶ 31). This results in a back pay award of $25,107.64 from January 14, 2025 through September 11, 2025 (34 weeks × $738.46 per week = $25,107.64).

On September 11, 2025, Plaintiff obtained another job paying the same hourly rate ($20 per hour) but providing only twenty-five hours of work per week, resulting in weekly salary of $500. (DE 16-1 ¶ 32). This left a shortfall of $238.46 per week ($738.46 − $500 = $238.46) as compared to her previous job with Defendant. Plaintiff was still working this new job approximately nine weeks later when Defendant filed its corporate dissolution on November 11, 2025. (DE 9 ¶ 2, DE 16-1 ¶ 32). This results in an additional back pay award of $2,146.14 from September 11, 2025 through November 11, 2025 (9 weeks × $238.46 per week = $2,146.14). The Court therefore calculates Plaintiff's total back pay as follows:

| | |
|---|---|
| 1/14/25 – 9/11/25 | $25,107.64 |
| 9/11/25 – 11/11/25 | $2,146.14 |
| **Total** | **$27,253.78** |

**2. Front Pay**

Plaintiff seeks $24,799.84 in front pay. (DE 16 at 11). Title VII authorizes an award of front pay in appropriate circumstances to serve as a replacement for reinstatement. Specifically, "[i]n cases in which reinstatement is not viable because of continuing hostility

between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). Like its cousin back pay, the purpose of front pay is to make plaintiffs whole for the damages caused by unlawful discrimination. *Nord*, 758 F.2d at 1473.

Front pay should not be ordered where, as here, a defendant goes out of business prior to the date of final judgment. As with back pay, to award front pay in such circumstances would make a plaintiff better than whole since it would compensate the plaintiff during a time when he or she would not have had a job with the defendant at all, for reasons unrelated to discrimination. *See Sandlin v. Corp. Interiors Inc.*, 972 F.2d 1212, 1215 (10th Cir. 1992) ("We agree with the district court that reinstatement is not possible and front pay is inappropriate if a defendant company has ceased doing business.").

In this case, the record shows that Defendant filed a corporate dissolution on November 11, 2025. (DE 9 ¶ 2). Given the fact that Defendant filed its corporate dissolution prior to the date of final judgment, this Court cannot order reinstatement or its alternative, front pay. As such, the Court declines to award front pay.

**3. Emotional-Distress Damages**

Plaintiff seeks $20,000 for emotional distress. (DE 16 at 11–12). Title VII allows aggrieved plaintiffs to recover compensatory damages for emotional pain, suffering, inconvenience, and mental anguish. 42 U.S.C. § 1981a(b). A factfinder has broad discretion in awarding such damages under Title VII, provided they are "proven by competent, sufficient evidence." *Akouri*, 408 F.3d at 1344-45.

Applying these standards here, the Court finds that Plaintiff should be awarded $20,000 for emotional distress damages. According to Plaintiff, her supervisor subjected her to extreme verbal abuse, yelled at her, and publicly humiliated her in front of clients, students, and teachers. (DE 16-1 ¶¶ 6, 9). At one point, the supervisor asked Plaintiff if she was stupid. (DE 16-1 ¶ 6). Plaintiff felt targeted and afraid to return to work on a daily basis. (DE 16-1 ¶ 37). She became so distressed that she had to seek emergency medical care due to contractions brought on by the supervisor's abusive behavior. (DE 16-1 ¶ 7). Following her termination, Plaintiff experienced additional emotional harm from the stress and anxiety of living without an income and searching for new employment. (DE 16-1 ¶ 38). Plaintiff gave birth prematurely, which she believes was caused, in part, by the stress she endured. (DE 16-1 ¶ 26).

In the Court's view, Plaintiff has provided competent, sufficient evidence to support this award. *Carlisle v. Nat'l Com. Servs., Inc.*, 722 F. App'x 864, 870 (11th Cir. 2018) (affirming the entry of a default judgment without a hearing where the plaintiff had filed an affidavit concerning his emotional distress damages); *Garcia v. Unit Dose Servs., LLC*, No. 23-61352-CIV, 2023 WL 6962827, at *4–5 (S.D. Fla. Oct. 2, 2023) (relying on the plaintiff's affidavit to recommend a $100,000 emotional-distress award on default judgment), *R. & R. adopted*, 2023 WL 6958658 (S.D. Fla. Oct. 20, 2023). The Court also notes that this award falls within the range of emotional distress damages awarded in other employment discrimination cases in this judicial district.[2] For

[2] *See, e.g.*, *Joss v. United Home Mortgage Ctr. of Florida, Inc.*, No. 09-60411-CIV, 2011 WL 13272300, at *3–4 (S.D. Fla. Jan. 26, 2011), *R. & R. adopted*, 2011 WL 13272301 (S.D. Fla. Mar. 7, 2011) (awarding $100,000 for emotional distress when the plaintiff testified that she feared men, did not want to be alone with a man, did not want to go out alone at night, suffered from crying spells, became less social and outgoing, and distanced herself from others); *Hudson v. Chertoff*, 473 F. Supp. 2d 1286, 1287-88, 1290-92 (S.D. Fla. 2007) (awarding the statutory cap of $300,000 for emotional pain and mental anguish where evidence showed the plaintiff suffered a relapse in his depression, experienced anxiety and distress, felt "sick" and "destroyed," became nauseous, cried uncontrollably, had difficulty sleeping, was "unable to enjoy life's everyday pleasures," had

all of these reasons, the Court finds that Plaintiff should be awarded **$20,000** for emotional distress damages.

**C. Attorneys' Fees and Costs**

Plaintiff next seeks $6,741.30 in attorneys' fees and costs. (DE 16 at 12–14, DE 16-2 ¶ 5). Courts analyze requests for attorneys' fees in two steps: entitlement and amount. As to entitlement, Title VII allows attorneys' fees and costs to the prevailing party at the Court's discretion. 42 U.S.C. § 2000e-5(k). Based on the default entered here, the Court finds Plaintiff to be the prevailing party in this action for purposes of attorneys' fees and costs.

As to amount, courts generally calculate reasonable attorneys' fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). This number, referred to as the "lodestar," carries a strong presumption of reasonableness, but may be adjusted by the court. *Id.* A fee applicant bears the burden to prove reasonableness, which normally includes "supplying the court with specific and detailed evidence." *Norman v. Housing Auth. of City of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988).

Here, Plaintiff's counsel has provided the Court with billing invoices and an affidavit in support thereof. (DE 16-3, DE 16-4). The first step in calculating the lodestar is to determine reasonable hourly rates. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience,

---

strained relationships with his wife and daughter, and was socially isolated); *Bernstein v. Sephora*, 182 F. Supp. 2d 1214, 1228-30 (S.D. Fla. 2002) (awarding $75,000 for emotional pain and mental anguish when the plaintiff testified that she had trouble sleeping and waking, lost her appetite, was no longer her usual easy-going self, and felt sick, angry, furious, upset, and anxious, and when there was evidence of medical conditions such as a jaw condition and gastrointestinal problems but a weak causal link between these conditions and the Title VII violation).

and reputation." *Van De Velde NV v. Felder*, No. 15-cv-24096, 2017 WL 8895345, at *4 (S.D. Fla. May 25, 2017), *R. & R. adopted*, 2017 WL 8895340 (S.D. Fla. June 16, 2017). A court may act as its own expert in making this determination. *See Norman*, 836 F. 2d at 1303. The Court finds the hourly rates requested here ($400 for Attorney GS, $400 for Attorney AS, $300 for Attorney AG, and $175 for Paralegal Dilma) to be reasonable.

The next step in calculating the lodestar is to determine the reasonable number of hours expended on the case. In making this determination, courts generally look to factors such as (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *see In re Home Depot Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019) (noting that the *Johnson* factors are typically subsumed within the lodestar analysis). Once again, courts may act as their own expert in making this determination. *Norman*, 836 F.2d at 1303.

The Court has reviewed the time records here as well as the *Johnson* factors. Based on this review, the Court finds the total number of hours to be reasonable. The Court therefore awards the full amount requested of $6,257.50 in attorneys' fees.

Finally, Plaintiff requests costs of $405.00 for a filing fee and $78.80 for a service fee, for total costs of $483.80. (DE 16-2 ¶ 2, DE 16-3 at 3). The Court finds these costs to be

reasonable. The Court therefore finds that Plaintiff should be awarded $483.80 in costs, resulting in a combined award of **$6,741.30** in attorneys' fees and costs.

**D. Conclusion**

In sum, the Court awards the following amounts:

| | |
|---|---|
| Back Pay: | $27,253.78 |
| Front Pay: | $0 |
| Emotional Distress: | $20,000.00 |
| Attorneys' Fees & Costs: | $6,741.30 |
| Total: | **$53,995.08** |

**IV. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT**

For the reasons stated above, the undersigned **RECOMMENDS** as follows:

1. Plaintiff's Motion for Default Judgment (DE 16) should be **GRANTED IN PART.**

2. The District Judge should enter a Default Judgment in favor of Plaintiff and against Defendant in the total amount of **$53,995.08**, with post-judgment interest accruing at the statutory rate set forth in 28 U.S.C. § 1961.

3. The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

4. **IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 4th day of September 2026.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE